UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MAUREEN RIDER,

                                    Plaintiff,

                -vs-                                                    03-CV-0701C(F)

GENERAL MOTORS CORPORATION,

                                    Defendant.
_____

APPEARANCES:         SANDERS & SANDERS (HARVEY P. SANDERS, ESQ.),
                     Amherst, New York, for Plaintiff.

                     LATHROP & GAGE L.C. (PATRICK M. GAVIN, ESQ.), Kansas
                     City, Missouri, for Defendant.


                            **BACKGROUND**

        Plaintiff commenced this employment discrimination case on September 17, 2003

alleging causes of action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000(e), *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.,*

and the New York State Human Rights Law, N.Y. Exec. Law § 290, *et seq.* ("NYSHRL").

Plaintiff alleges that she was the victim of intentional discrimination and harassment based

on her gender and disability.  Item 1.

        Plaintiff, formerly an assembly line worker at defendant's Tonawanda, New York

engine plant, alleges that she is disabled by urinary incontinence.  She requested that she

be allowed to take restroom breaks as needed, but defendant denied this requested

accommodation because it asserted that such an accommodation could result in shutting

down the assembly line if a relief worker was not immediately available.  Plaintiff was

temporarily placed in a transitional position, without the opportunity for overtime, and then on sick leave, at a percentage of her full pay. Plaintiff also claims that she was the victim of a hostile work environment based both on her gender and disability. Plaintiff now works in a non-assembly line position as a statistical processing analyst for defendant.

On March 18, 2005, defendant filed this motion for summary judgment. Item 21. It contends that plaintiff is not disabled under either the ADA or the NYSHRL; that her only requested accommodation was unreasonable; that defendant reasonably accommodated plaintiff; that plaintiff cannot establish gender discrimination; that she failed to exhaust administrative remedies with regard to her claims of hostile work environment based on gender and disability; that her hostile work environment claims are untimely; and that plaintiff's hostile work environment claims, based either on gender or disability, must be dismissed on the merits. Plaintiff filed her response to the motion on July 20, 2005. Items 30-32. Defendant filed a reply on August 22, 2005. Item 34. Oral argument was heard on December 5, 2005. For the reasons that follow, defendant's motion for summary judgment is granted, and the complaint is dismissed.

## FACTS[1]

Plaintiff states that most of the facts in this case are not in dispute. Plaintiff began her employment with defendant in 1973, and primarily worked assembly line jobs at the Tonawanda plant. Item 22, Exh. B., Deposition of Maureen Rider ("Rider Dep."), p. 51. In 2000, plaintiff obtained a permanent position on the timing chain assembly line. *Id.,* p.

---

[1] This factual statement is taken from the papers filed in support of and in opposition to the motion for summary judgment, including defendant's Statement of Material Facts with supporting exhibits (Item 22) and plaintiff's counter statement and exhibits (Items 30-31).

86.   Assembly line workers receive three scheduled breaks per shift, including two 23-minute breaks and a 30-minute lunch period.   Breaks are either provided by shutting down the assembly line and giving all employees a break at the same time, a system known as "mass relief," or providing relief for individual employees known as "tag relief."   For an unscheduled break, an employee is expected to stay at his or her job until a relief worker arrives, which may involve a wait of five to ten minutes.   Item 23, Exh. D., Deposition of Joel Williams ("Williams Dep."), pp. 13, 15.   Plaintiff stated that she requires approximately two unscheduled bathroom breaks each day.   Rider Dep., p. 23.

Plaintiff began to experience urinary incontinence in the late 1980s.   Rider Dep., p. 25.   Plaintiff's medical conditions, stress incontinence and urge incontinence, decrease her ability to wait before having to go to the restroom.   *Id.,* pp. 22-24.   Additionally, the lifting of heavy objects can cause a bladder release.   *Id.,* p. 26.   In 2001, plaintiff suffered two incidents of involuntary bladder release.   The first occurred in May 2001 when a relief worker was not immediately available to relieve her.   Plaintiff stopped the assembly line, but was unable to make it to the bathroom.   *Id.,* pp. 95-96.   The second incident, in August 2001, occurred when plaintiff attempted to lift a heavy box of stock.   The box slipped from her hands, and she tried to catch it.   *Id.,* p. 98.   As a result of the second incident, plaintiff suffered a groin pull and went on a medical leave.   *Id.,* pp. 103, 105.   On October 4, 2001, plaintiff's physician, Dr. Richard Gilbert, stated that plaintiff could return to light duty work, with no pushing, pulling, or lifting, and must be able to use the restroom as needed. Item 30, Exh. 12.   When plaintiff returned to work in October 2001, she was advised that she would be unable to work on the assembly line.   *Id.,* pp. 112-13.   She was reassigned

to the Transitional Work Center ("TWC") on a temporary basis, where she could use the restroom as needed, did not have to lift heavy objects, and earned the same pay and benefits, although she was not eligible for overtime.  *Id.,* pp. 120-21.

After approximately four months in the TWC, plaintiff expected to return to her assembly line position.  Rider Dep., p. 121.  In January 2002, plaintiff was informed that she would be unable to return to the timing chain position and was told to look for another position at the plant.  *Id.,* pp. 122, 124.  Dr. Quick, the plant physician, suggested that plaintiff wear an adult absorbent undergarment, but plaintiff refused, although she wears a sanitary pad for the same purpose.  *Id.,* pp. 137, 139.

Plaintiff's supervisor, Joel Williams, determined that plaintiff could not work on the assembly line.  He understood her medical restrictions to mean that she should be able to regularly leave the assembly line without notice to use the bathroom as needed.  Item 23, Exh. E, ¶ 4.  Williams was unable to have a relief worker on call for plaintiff.  Williams Dep., pp. 81-82, 85.  In an affidavit, Williams stated that assembly line shut-downs could result in the loss of 30 to 40 engines per day.  Item 23, Exh. E, ¶ 5.

In March 2002, plaintiff's assignment in the TWC expired, and she was put on sick/disability leave until an appropriate position became available.  She stayed on sick leave from March 11, 2002 until October 20, 2003.  Plaintiff then worked at the TWC until February 2004, when she was assigned a position as a statistical processing consultant.  She is able to take bathroom breaks as needed and is able to earn overtime pay in her current position.  Rider Dep., pp. 150, 152.

In her deposition, plaintiff stated that she was harassed because of her disability, but not because of her gender.  Rider Dep., p. 168.  She stated that she was harassed by

two co-workers, Al Urbino and Peter Koehne.  *Id.*  She denied being directly harassed by her supervisor, Joel Williams, but stated that Williams knew about the harassment by her co-workers.  *Id.*  Specifically, plaintiff complained that Urbino and Koehne made comments about her condition, and refused to relieve her from the assembly line when she requested. Plaintiff stated that the last incident of harassment occurred in approximately July 2001. *Id.,* p. 171.

In an affidavit in response to the motion for summary judgment, plaintiff stated that she has been discriminated against on the basis of her gender because male employees with similar problems have been accommodated by defendant.  Item 30, Exh. 1, ¶ 31. Specifically, plaintiff states that David Haddad and Doug Adams have "similar" problems, but arrangements have been made to relieve the men so that they could keep their jobs. *Id.*  Plaintiff also states that co-workers made comments about her frequent need to use the bathroom, and complained about having to "babysit" her bladder.  *Id.,* ¶ 34.  Plaintiff stated that co-workers laughed at her, and ignored her requests for relief.  She complained to her foreman, Joel Williams, about the harassment, and filed grievances against him for his failure to rectify the situation.  *Id.*  Plaintiff states that Urbino and Koehne "intentionally" harassed her and "had the desire to hurt [her] personally."  *Id.,* ¶ 35.

## DISCUSSION

Defendant argues that plaintiff is not disabled within the meaning of either the ADA or the NYSHRL, that she is unable to show that she was denied a reasonable accommodation, and that she is unable to establish gender discrimination.  Defendant also

contends that plaintiff's hostile work environment claims must be dismissed for failure to exhaust administrative remedies, on statute of limitations grounds, and on the merits.

Plaintiff argues that she is disabled, or was regarded as disabled, for purposes of the ADA in that her incontinence substantially limits the major life activities of waste elimination, pushing/pulling/lifting, and working. She also contends that she is disabled for purposes of the NYSHRL, as that statute defines disability in broader terms than the ADA. Plaintiff argues that defendant denied her the reasonable accommodation of restroom breaks as needed, that she was subjected to a hostile work environment based on her gender and her disability, and that she was discriminated against based on her gender.

## 1. Summary Judgment Standard

The standard of review on a motion for summary judgment is well established. Summary judgment will be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The burden of establishing the absence of a genuine factual dispute rests on the party seeking summary judgment. *See Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 36 (2d Cir. 1994). The movant may discharge this burden by demonstrating that there is an absence of evidence to support the nonmoving party's case on an issue on which the non-movant has the burden of proof. *See Celotex,* 477 U.S. at 323.

If the moving party meets its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing

that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The function of a district court in considering a summary judgment motion is not to resolve disputed issues of fact, but to determine whether there is a genuine issue to be tried.  *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).   In assessing the record, including any affidavits, exhibits, and other submissions, the court is required to resolve all ambiguities and to draw all factual inferences in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Rattner v. Netburn,* 930 F.3d 204, 209 (2d Cir. 1991).  The nonmoving party may not rest upon unsubstantiated allegations, conclusory assertions, or mere denials, but must set forth and establish specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).  A metaphysical or other whimsical doubt concerning a material fact does not establish a genuine issue requiring trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 584 (1986).  If there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper.  *Chambers,* 43 F.3d at 37.

## 2.  Plaintiff's ADA Claim

The ADA prohibits discrimination by an employer covered by the ADA against a "qualified individual with a disability because of the disability of such individual . . . ."  42 U.S.C. § 12112(a).  In connection with discrimination claims under the ADA, the Second Circuit applies the familiar burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  *See Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998).  Under that analysis, a plaintiff bears the initial

burden of establishing a *prima facie* case of discrimination by showing that (i) her employer is subject to the ADA; (ii) she suffered from (or was regarded as suffering from) a disability within the meaning of the ADA; (iii) she could perform the essential functions of her job with or without reasonable accommodation; and (iv) she suffered an adverse employment action because of her disability.  *See McDonnell Douglas Corp.*, 411 U.S. at 802; *Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004).  As many courts have noted, this initial burden is not a demanding one.  *See Greenway*, 143 F.3d at 52.

If a plaintiff succeeds in making a *prima facie* showing, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the action taken. *McDonnell Douglas*, 411 U.S. at 802; *see also Greenway,* 143 F.3d at 52 (citing *McDonnell Douglas*).  Should the defendant carry that burden of production, the plaintiff then must prove that the reason proffered by the employer is merely a pretext for its intentional discrimination.  *See McDonnell Douglas*, 411 U.S. at 804.

Turning to the second element of a prima facie showing, the term "disability" is defined in the ADA as:  "a physical or mental impairment that substantially limits one or more of the major life activities of an individual; . . . a record of such impairment; . . . or being regarded as having such an impairment."  42 U.S.C. § 12102(2).  To establish a disability under the ADA, a plaintiff must show that (i) she suffers from a physical or mental impairment; (ii) the claimed impairment affects a specific activity that constitutes a "major life activity;" and (iii) the impairment "substantially limits" the major life activity identified. *See Sussle v. Sirina Protection Sys. Corp.*, 269 F. Supp. 2d 285, 297 (S.D.N.Y. 2003). In

order to determine whether these requirements have been met, a court must engage in an "individualized and fact-specific" inquiry. *Colwell v. Suffolk County Police Dep't*., 158 F.3d 635, 643 (2d Cir.1998), *cert. denied*, 526 U.S. 1018 (1999).

The terms "physical impairment," "substantially limits," and "major life activity" are not defined in the ADA. Nevertheless, the EEOC, the agency charged with enforcement of the statute, has defined those terms in its regulations. Those regulations are not binding on the federal courts, but still provide useful guidance concerning the statute's proper interpretation. *See Ryan v. Grae & Rybicki*, 135 F.3d 867, 870 (2d Cir. 1998). The EEOC regulations define a physical impairment as any "physiological disorder, or condition . . . affecting one or more of the following body systems:  neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine."  29 C.F.R. § 1630.2(h)(1).  Under the EEOC regulations, the term "major life activities" is defined to include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I).  A person is "substantially limited" in the ability to perform a major life activity if the person is "[u]nable to perform a major life activity that the average person in the general population can perform" or is "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to . . . the average person in the general population . . . . "  29 C.F.R. § 1630.2(j)(1), (2).  The regulations explain further that with respect to the major life activity of working, the term "substantially limits" means "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs . . . as compared to the average person having comparable training,

skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i).  The inability to perform a single particular job does not constitute a substantial limitation in the major life activity of working.  *See Adams v. Rochester General Hosp.,* 977 F. Supp. 226, 232 (W.D.N.Y.1997) (to succeed on ADA claim, plaintiff must show his impairment substantially limited his ability to work at not only his existing job, but any job).

Among the factors that may be considered in determining whether an individual is substantially limited in a major life activity are the nature and severity of the impairment, the duration or expected duration of the impairment, the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment.  29 C.F.R. § 1630.2(j)(2).  To be substantially limited in any major life activity, "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives.  The impairment's impact must also be permanent or long term." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002).  A plaintiff must do more than submit evidence  of a medical diagnosis; she must offer "evidence that the extent of the limitation caused by [the] impairment in terms of [her] own experience is substantial." *Id.* (internal quotation and citation omitted).  In making this determination, a court's inquiry is not limited to analyzing the effect of the impairment on the workplace, but a court must determine whether the impairment has a substantial limitation on "activities that are of central importance to most people's daily lives . . . ." *Id.* at 202.

Finally, even if a plaintiff is unable to establish that she is disabled within the meaning of the ADA, she may satisfy the first element of the *prima facie* case by making

the alternative showing that her employer regarded her as having a physical or mental impairment that would substantially limit a major life activity.  *Sutton v. United Air Lines*, 527 U.S. 471, 489 (1999); *DaPonte v. Manfredi Motors, Inc.*, 335 F. Supp. 2d 352, 356-57 (E.D.N.Y. 2004), *aff'd,* 157 Fed. Appx. 328 (2d Cir. 2005).  As the Second Circuit has explained:  A "regarded as" claim "'turns on the employer's perception of the employee' and is therefore 'a question of intent, not whether the employee has a disability.'" *Colwell v. Suffolk County Police Dep't*, 158 F.3d at 646 (quoting *Francis v. City of Meridien*, 129 F.3d 281, 284 (2d Cir. 1997)).  It is not enough that the employer perceive the employee as "somehow disabled;" the employer must regard the employee as "disabled within the meaning of the ADA," *i.e.*, having an impairment that substantially limits a major life activity. *Id.* at 646 (emphasis omitted); *see Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 201 (2d Cir. 2004).

Plaintiff claims that she is disabled in that her urinary incontinence substantially limits her ability to control the elimination of waste, to perform manual tasks that involve pushing, pulling, or lifting more than five pounds, and working.  The elimination of waste is not specifically considered a major life activity in the regulations, but the Second Circuit in *Grae* assumed it was for purposes of its discussion of colitis as a disabling condition. In *Grae,* the plaintiff was sometimes compelled to rush to the bathroom, often with just a few seconds' notice.  The court found, however, that the plaintiff's colitis was not always symptomatic, and thus it did not "substantially limit" the ability to control the elimination of waste.  *See Ryan v. Grae & Rybicki*, 135 F.3d at 871.

Here, plaintiff argues that she is "significantly restricted as to the manner and duration of which she can control her bladder" and the "consequences of her difficulty controlling elimination of her own waste are severe . . . ."  Item 32, p. 12.  In contrast, plaintiff also states that her condition is "stable," and does not otherwise impact her activities of daily living.  Item 30, Exh. 1, ¶ 4.  The court finds that while plaintiff's ability to control her waste is "affected," she is not "substantially limited" by her urinary incontinence.  Plaintiff states that she needs to use the bathroom eight to nine times per day, more frequently than the average person.  *Id.,* ¶¶ 4, 25.  She argues that if she were allowed to work on the assembly line, she would require approximately two unscheduled breaks per work shift and that she would be able to provide notice of her need so that a relief worker could replace her.  *Id.,* ¶¶ 14, 16.  While plaintiff's urinary incontinence is a permanent condition and affects her on a daily basis, the impact of the condition on plaintiff's daily life is not so severe as to prevent or restrict her from doing activities that are of central importance to most people's daily lives.  Other than being unable to leave the assembly line without relief, plaintiff states that her condition does not otherwise affect her activities of daily living.  *Id.,* ¶ 4.  While on medical leave in September 2001, plaintiff worked in New York City helping the families of victims of the terrorist attacks.  *Id.,* ¶ 17.  She does housework, cooks, works in the garden, drives, bakes cakes, and decorates her home.  She has given up golf and bowling, but travels with her husband.  Rider Dep., pp. 18-22.  Accordingly, the court finds that plaintiff is not substantially limited in the ability to control the elimination of waste.

Plaintiff also argues that she is limited in her ability to push, pull, and lift more than five pounds, because heavier lifting can cause an "accident" for a person with stress

incontinence.   While plaintiff's ability to lift, push, and pull are "affected" by her urinary incontinence, these abilities are not "substantially limited."   Plaintiff is able to go about her daily routine, hold a job, take care of her home, and engage in activities of daily living.   She testified that she gave up golfing and bowling because of the weight of the equipment and the exertion.   While these sporting activities are meaningful to those who engage in them, they are not essential activities of daily life.   Thus, the court concludes that plaintiff's restrictions are not "substantial limitations" in the ability to lift, push, or pull.

Finally, plaintiff has not shown that she is significantly restricted in her ability to work because she is not significantly restricted in the ability to perform either a class of jobs or a broad range of jobs.   *See* 29 C.F.R. § 1630.2(j)(3)(I).   Plaintiff is currently working in a non-assembly line position with no decrease in salary.   Additionally, although there is no Second Circuit case law directly on point, several courts have held that urinary incontinence does not substantially limit a major life activity.   *See Swain v. Hillsborough County Sch. Bd.,* 146 F.3d 855, 858 (11th Cir. 1998) (plaintiff "presented no evidence to show that she cannot perform a broad range or class of jobs; instead, she simply makes the vague assertion that she is unable to perform any job that precludes her from having regular access to a restroom"); *see also Martin v. AT&T Corp.,* 331 F. Supp. 2d 1274, 1299 (D.Colo. 2004) (plaintiff's allegations regarding his need to wear protection and to frequently go to the bathroom do not substantially limit a major life activity and cannot form the basis of an ADA discrimination claim); *Sepulveda v. Glickman*, 167 F. Supp. 2d 186, 191 (D.P.R. 2001) (plaintiff's diabetes that "'require[d] medication, a fixed meal schedule, timely snack breaks, and the opportunity to use the bathroom very frequently during the

work day'" did not constitute a substantial limitation on a major life activity); *Williams v. H.N.S. Mgmt. Co., Inc.*, 56 F. Supp. 2d 215, 221 (D.Conn. 1999) (holding that plaintiff's need to frequently urinate could only substantially limit a major life activity if restrooms were not accessible); *Clark v. Dallas Indep. Sch. Dist.*, 1996 WL 706866, at *4 (N.D.Tex. December 3, 1996) (holding that teacher's need to use the restroom immediately when necessary did not substantially limit her in a major life activity).   "[M]erely needing to be near a bathroom is not a limitation that rises to the level of severity, frequency and duration required for a finding of a disability under the ADA."   *Sacay v. Research Found. of City Univ. of N.Y.*, 193 F. Supp. 2d 611, 629 (E.D.N.Y. 2002).

Alternatively, plaintiff argues that she was perceived as disabled because defendant placed her on medical leave until another position became available.   Defendant argues that it encouraged plaintiff to look for other positions at the plant that did not involve assembly line work, and only placed plaintiff on paid medical leave when her time in the TWC expired, her temporary job had been completed, and there were no other appropriate positions available to plaintiff.   There is no proof in the record that defendant considered plaintiff as "disabled within the meaning of the ADA," *i.e.*, having an impairment that substantially limits a major life activity. *Colwell v. Suffolk County Police Dep't*, 158 F.3d at 646.   The offer of a leave of absence, by itself, does not indicate a perception on defendant's part that plaintiff is substantially impaired in a major life activity.   *See Kramer v. Hickey-Freeman, Inc.*, 142 F. Supp. 2d 555, 560 (S.D.N.Y. 2001).   To accept plaintiff's argument that the offer of paid medical leave is evidence that defendant perceived her as having a disability that substantially limits a major life activity would "'discourage[ ]

-14-

employers from taking such preliminary or temporary steps to keep their employees happy for fear that showing concern for an employee's alleged medical problems could draw them into court facing an ADA claim based on a perceived disability.'" *Id.* (quoting *Mobley v. Bd. of Regents of the Univ. Sys. of Georgia*, 924 F. Supp. 1179, 1188 (S.D.Ga.), *vacated on other grounds*, 26 F. Supp. 2d 1374 (S.D.Ga.1996)).   Moreover, defendant would have allowed plaintiff to return to the assembly line if she had taken the precaution of wearing an adult absorbent undergarment.  Accordingly, plaintiff has failed to show that defendant perceived her to be disabled under the ADA.

As the court has determined that plaintiff was not disabled for purposes of the ADA, it need not reach the issue of the reasonableness of plaintiff's requested accommodation, or plaintiff's argument that she was harassed and suffered a hostile work environment based on her disability.  *See Edwards v. Brookhaven Science Assocs., LLC*, 390 F. Supp. 2d 225, 232 (E.D.N.Y. 2005) (failure of plaintiff to establish ADA disability precludes discrimination and harassment cliams under the ADA).   The defendant's motion for summary judgment dismissing the ADA cause of action is granted.

## 3.  Title VII Claims

Plaintiff claims that she was the victim of gender discrimination because GM provided two male employees with the accommodation of restroom breaks as needed. Defendant claims that plaintiff has failed to offer evidence that the two male employees were similarly situated or, even assuming that plaintiff has shown disparate treatment, that defendant's actions were motivated by discriminatory animus.

### A.  Disparate Treatment Claim

Title VII of the Civil Rights Act of 1964 provides that it shall be an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  The court applies the three-part *McDonnell Douglas* test to Title VII employment discrimination claims.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  First, the plaintiff must establish a *prima facie* case of Title VII disparate treatment by showing "1) that [s]he belonged to a protected class; 2) that [s]he was qualified for the position she held; 3) that [s]he suffered an adverse employment action; and 4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent."  *Feingold v. New York,* 366 F.3d 138, 152 (2d Cir. 2004); *see also Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 (2d Cir. 2000).  If the plaintiff establishes a *prima facie* case, "a rebuttable presumption of discrimination arises and the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decision."  *Stratton v. Dept. for the Aging*, 132 F.3d 869, 879 (2d Cir. 1997). If the defendant meets its burden, "the presumption of discrimination is rebutted and it 'simply drops out of the picture.'"  *Id*. (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510-11 (1993)).   In the third and final step, the burden shifts back to the plaintiff to prove that the employer's explanation for the employment decision is merely pretextual.  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

In order to show that the alleged adverse employment action gives rise to an inference of discrimination, plaintiff may demonstrate that the employer treated her less favorably than a similarly situated employee outside the protected group. *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir.2000). In order to raise an inference of discrimination, the plaintiff must be "similarly situated in all material respects" to the individuals with whom she seeks to compare herself. *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir.1997). "A plaintiff is not obligated to show disparate treatment of an *identically* situated employee" when presenting *prima facie* evidence of discrimination, but the object of comparison "must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir.2001).

Plaintiff has not satisfied her burden of establishing a *prima facie* case of gender discrimination. She has presented a document that purports to show that male employees with medical excuses for frequent bathroom usage were treated more favorably than female employees. *See* Item 30, Exh. 11. However, all of the restrictions on this document are temporary, ranging in length from four days to one year, in contrast to plaintiff's permanent restriction. All but one of the employees, a male employee with an 11-day restriction, are listed as working in different departments and/or under different supervisors than plaintiff. Plaintiff has failed to show that she is similarly situated, and this document does not raise an inference of discrimination.

Additionally, plaintiff testified that a male co-worker, David Haddad, had an unspecified urinary problem and often urinated on himself. Haddad was an assembly line

worker on a different job who worked for a different foreman.  Rider Dep., pp. 201-04.

Plaintiff states that Haddad was able to get an immediate relief person if he needed to go

to the restroom, although she did not observe this herself.  *Id.,* p. 204.  Additionally, plaintiff

testified that a male employee on another assembly line, Doug Adams, was disciplined for

leaving his position to use the bathroom.  He suffered from a "spastic bowel" caused by the

stress of a divorce.  Plaintiff stated that Adams was allowed to return to his position on the

assembly line following a temporary placement in the TWC.  *Id.,* pp. 204-05.

Plaintiff has also submitted the determination of the EEOC, dated April 11, 2003

(Item 30, Exh. 4), in which the agency "identif[ied] two men with conditions that affect their

urinary systems and causes them to have to use the restrooms more frequently.  Both of

these individuals are relieved when necessary.  Neither of these male individuals has been

forced onto leave."  *Id.*  The court presumes that these two employees are Haddad and

Adams.  Despite this finding by the EEOC and plaintiff's deposition testimony, there is

nothing in the record to establish that these employees were similarly situated to plaintiff

such that an inference of gender discrimination is warranted.  For instance, it is apparent

from the record that Adams did not suffer from a urinary condition, and it is unclear whether

Haddad's condition was chronic or temporary.  It is also unclear whether the two male

employees were able to wait for a relief worker or were allowed to leave their positions as

needed.  These employees do not work on the same assembly line as plaintiff and do not

serve under the same supervisor or foreman.  Plaintiff has not shown that she is "similarly

situated in all material respects" to the individuals with whom she seeks to compare

herself, and thus has not raised an inference of gender discrimination.  *Shumway v. United*

*Parcel Serv.*, 118 F.3d at 64.  Moreover, the court need not accord conclusive weight to

the EEOC determination.  *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1284 (9th Cir.

2000) (EEOC letters which report only conclusions are insufficient to create a genuine

issue of material fact), *cert. denied*, 533 U.S. 950 (2001); *see also Cook v. Deloitte &*

*Touche, LLP*, 2005 WL 2429422, *13 (S.D.N.Y. September  30, 2005) (EEOC

determination cannot fill the gaps in plaintiff's *prima facie* showing).  Accordingly, plaintiff

has failed to raise a genuine issue of material fact with respect to her claim of gender

discrimination under Title VII.

### B.  Hostile Work Environment

Finally, plaintiff claims that she was subjected to a hostile work environment based

on her gender and her disability.[2]  Defendant contends that plaintiff did not include

allegations of a gender based hostile work environment in her EEOC charge.  In fact, a

review of the EEOC charge reveals that plaintiff did not complain of a gender-based hostile

work environment.  In her EEOC charge, plaintiff stated that between 1995 and 1997 she

suffered ridicule and harassment from the relief staff because of her medical condition.

Plaintiff testified that she told Williams about the harassment she suffered.  Rider

Dep., pp. 172-73.  In September 1999, Williams told plaintiff that nobody liked her.  *Id.,* p.

173.  In her affidavit, plaintiff stated that a co-worker complained about having to "babysit"

her bladder, and ridiculed her for not being able to do her job.  This same employee and

others would refuse to relieve her when she needed a bathroom break.  Item 30, Exh. 1,

---

[2]  As the court has already determined that plaintiff is not a qualified individual with a disability for purposes of the ADA, her claim of a hostile work environment based on her disability must necessarily fail. *See Edwards v. Brookhaven Science Associates, LLC*, 390 F. Supp. 2d 225, 232 (E.D.N.Y. 2005) (failure of plaintiff to establish ADA disability precludes discrimination and harassment claims under the ADA).

¶ 34.  Plaintiff also stated that the suggestion by the plant physician that she wear an adult absorbent undergarment "is just one example of a comment that caused [her] to experience such embarrassment."  *Id.*

Williams testified that plaintiff complained to him about co-workers, specifically Al Urbino, making comments about her condition.  Williams Dep., pp. 60, 62, 66, 67.  Plaintiff also complained that Urbino refused to relieve her.  *Id.,* pp. 63-64.  Williams stated that he instructed Urbino to relieve people in the order that they requested, and that he tried to "make sure that [plaintiff] got relief by any means. . . ."  *Id.,* p. 65.  Williams testified that many of plaintiff's co-workers were resentful that plaintiff took a number of unscheduled bathroom breaks.  *Id.,* p. 71.

Assuming that plaintiff's allegations of harassment are not time-barred, she still must show that the "workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . .'" *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67 (1986)).  To establish this claim, however, the plaintiff "must prove more than a few isolated incidents of [discriminatory] enmity. Casual comments, or accidental or sporadic conversation, will not trigger equitable relief pursuant to the statute."  *Snell v. Suffolk County*, 782 F.2d 1094, 1103 (2d Cir. 1986) (citations omitted).  Factors to be considered when determining whether an environment is hostile or abusive include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."

*Harris v. Forklift Sys.,* 510 U.S. at 23; *see also Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1189 (2d Cir. 1987) ("to demonstrate a hostile work environment more than an episodic pattern of [discriminatory] antipathy must be proven"); *Bennett v. New York City Dep't of Corrections*, 705 F. Supp. 979, 982 (S.D.N.Y. 1989) (plaintiff "must prove more than a few isolated instances of [discriminatory] friction. . . . '[T]he incidents of harassment [must] occur either in concert or with a regularity that can reasonably be termed pervasive.'") (citations omitted).

Plaintiff has failed to allege any incidents of gender-based harassment.  In her affidavit in response to the motion for summary judgment, plaintiff states in conclusory fashion that she was "excluded and harassed by my co-workers because I was one of the only women."  Item 31, Exh. 1, ¶ 34.  Her deposition contains no specific instances of gender-based harassment, only allegations of harassment based on plaintiff's urinary incontinence.  However, plaintiff's complaints of harassment based on her disability cannot be aggregated with allegations of gender-based harassment in an effort to establish a hostile work environment under Title VII.  *See Shabat v. Blue Cross Blue Shield of Rochester Area*, 925 F. Supp. 977, 983 (W.D.N.Y. 1996).  Accordingly, plaintiff has failed to establish a hostile work environment based on gender, and her Title VII claims must be dismissed.

### 4.  Plaintiff's NYSHRL Claim

Defendant claims that plaintiff cannot show that she is disabled under the NYSHRL. Plaintiff states that the NYSHRL definition of disability is broader than that in the ADA, and

so she can make out a *prima facie* case under state law.  NY Executive Law § 292(21) defines "disability" as:

> (a) a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques or (b) a record of such an impairment or (c) a condition regarded by others as such an impairment, provided however, that in all provisions of this article dealing with employment, the term shall be limited to disabilities which, upon the provision of reasonable accommodations, do not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought or held.

N.Y. Exec. Law § 292(21).

For the most part, the ADA and corresponding New York State Human Rights Laws are construed similarly.  *See Pace v. Paris Maint. Co.*, 107 F. Supp. 2d 251, 266 (S.D.N.Y. 2000) ("The same *McDonnell Douglas* burden-shifting analysis applies to NYHRL discrimination claims, whether brought pursuant to the ADA, Title VII, or other federal employment discrimination statutes"), *aff'd*, 7 Fed.Appx. 94 (2d Cir. 2001). One area of disagreement, however, is in the definition of disability; the definition under state and city law is broader than the federal definition.  *See Burton v. Metro. Transp. Auth.*, 244 F. Supp. 2d 252, 257 (S.D.N.Y. 2003) (discussing differences and citing cases). The state law "defines disability more broadly than the ADA in that it only requires an impairment, not an impairment that substantially limits a major life activity." *Bater v. Kraft Foods Inc.*, 2005 WL 602383, *6 (W.D.N.Y. March 14, 2005).

Even if the court were to assume that plaintiff has established a *prima facie* case of disability discrimination under the NYSHRL, the claim should nonetheless be dismissed.

Title 28 U.S.C. § 1367(c)(3) provides that the district court may decline to exercise supplemental jurisdiction over a claim if the "court has dismissed all claims over which it has original jurisdiction."  In general, "'where the federal claims are dismissed before trial, the state claims should be dismissed as well.'"  *Giordano v. City of New York,* 274 F.3d 740, 754 (2d Cir. 2001) (citations omitted).  Here, as none of plaintiff's federal claims survives the motion for summary judgment, the court declines to exercise supplemental jurisdiction over the state law claim. Accordingly, the NYSHRL claim must be dismissed.

## CONCLUSION

Based on the foregoing, the defendant's motion for summary judgment is granted, and the complaint is dismissed.  Judgment shall be entered for defendant.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:  May 25, 2006
p:\opinions\03-701.mar2906